UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
PATRICK ALEXANDER,							Civil Action No.

        Plaintiff,

  -against-								**COMPLAINT**

ALEJANDRO N. MAYORKAS, in his official
capacity as Secretary of the Department
of Homeland Security and THOMAS J. WALTERS,
in his official capacity as Director of Federal
Law Enforcement Training Center, Department
of Homeland Security,
-----------------------------------------------------------------------X

      PATRICK ALEXANDER, by his attorneys Hogan, Rossi & Liguori complain of the Defendants as follows:

## NATURE OF THE CASE

1.    This is an action for Review of the Defendants' Final Agency Decision pursuant to the Administrative Procedures Act (hereinafter referred to as the "APA") 5 U.S.C. ¶701 et seq.

2.    The Plaintiff seeks declaratory relief, an Order setting aside the Agency action as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and (5 U.S.C. § 706(A)); without observance of procedure as required by law (5 U.S.C. § 706(C)) and; ancillary monetary damages that have arisen from the Agency action.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over the claims set forth herein pursuant to 5 U.S.C. §701 and 702.

4.    Venue in the Eastern District of New York is proper pursuant to 28 U.S.C. §1391(e)(1)(C) as it is the judicial district where the Plaintiff resides.

## THE PARTIES

5.      Plaintiff Patrick Alexander is a United States citizen who, at all relevant times, has resided in Brooklyn, New York. Plaintiff was appointed and sworn in as a Customs and Border Patrol Officer in August, 2018. On or about September 29, 2018, Plaintiff was removed from his basic training class at the Federal Law Enforcement Training Center in Glynco, Georgia (hereinafter referred to as "FLETC") and was restricted based upon an allegation of inappropriate conduct. On or about November 2, 2022, Plaintiff was instructed that his access to FLETC had been restricted and was instructed to write a letter to FLETC requesting that the access restriction be removed. Plaintiff was also informed that completion of basic training at FLETC was a requirement for employment as a CBPO. By letter of December 9, 2022, FLETC denied Plaintiff's request that the restriction of his access to FLETC be removed.

6.      Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security, of which FLETC is a part.

7.      Defendant Thomas J. Walters is the Director of FLETC and the individual who made the final Agency decision in this case.

## FACTS

### The Plaintiff's Career with the TSA

8.      Plaintiff Patrick Alexander is an African American male who had spent approximately fifteen years working in the federal service prior to his appointment as a Customs and Border Patrol Officer.

9.      Plaintiff was employed by the Transportation Security Agency (TSA) as a Transportation Security Officer (TSO) in February 2007. In November of 2012, the Plaintiff was promoted to Supervisor Transportation Security Officer (STSO). Plaintiff remained as a STSO until August

19, 2018 when he received a career-conditional appointment as a GS-9 Customs and Border Protection Officer (CBPO) with Customs and Border Protection (CBP), subject to the completion of a one-year probationary period.

10.     During Plaintiff's employment with the TSA, he had frequent contact and interactions while screening members of the public and also supervised TSO's. Plaintiff also interacted frequently with his co-workers, including in a supervisory capacity from November 2012 until August of 2018.

11.     During the entirety of Plaintiff's employment as a TSO and STSO, from 2007 until 2018 Plaintiff had an unblemished disciplinary record. Plaintiff was never accused of inappropriate conduct with a co-worker, civilian or otherwise.

The Incident

12.     Upon becoming a CBPO, Plaintiff was sent to basic training at the Federal Law Enforcement Training Center (hereinafter referred to as "FLETC" and pronounced as "FLET C") in Glynco, Georgia. Plaintiff was a member of CBP basic training class which commenced in September of 2018.

13.     On September 28, 2018, all members of Plaintiff's class participated in an activity in which they were required to spray one another with Oleoresin capsicum ("OC") spray. OC spray, also known as pepper spray, is used as a deterrent in policing, riot and crowd control, and also works as an inflammatory agent causing burning, pain and tears in the eyes, mouth and lungs.

14.     The OC spray activity is a rite of passage for trainees, and it is common for trainees to celebrate thereafter.

15.     Members of Plaintiff's class did celebrate after the OC spraying activity. Plaintiff was among the trainees who went to celebrate. First, at restaurant, Buffalo Wild Wings, then the

Student Center, and finally at "G-Bar." The celebration lasted until the early morning of September 29, 2018.

16. Plaintiff was the designated driver and was sober that evening.

17. Among the group was trainee, Esther Young. Over the course of the evening, Young was by her own admission, extremely drunk and did not feel well.

18. Class leader, trainee Allan Jones, bought Young a drink at G-Bar notwithstanding her obvious intoxication.

19. Upon information and belief, Jones and Young were romantically involved.

20. Young stated that she was feeling ill and wanted to go home.

21. Young evinced her intention to walk home, but Jones and others were concerned by her intoxication and did not want to permit her to walk home alone.

22. Jones asked Plaintiff to drive Young back to her room because Young was obviously intoxicated and not feeling well.

23. Plaintiff drove Young to her room. When Young got out of Plaintiff's car, she was unsteady and had difficulty walking. Plaintiff offered to call emergency services for Young, but she told him not to do so.

24. Plaintiff helped Young into her room. Once in the room, Young decided that she wanted to take a shower. Plaintiff remained in the main part of the dormitory room while Young was showering in the bathroom. Plaintiff did so for Young's safety, leaving her alone in her condition while she was in the shower posed a danger to Young.

25. While in the main part of the dormitory, Plaintiff helped Young remove her shoes and socks. He walked Young to the threshold of the bathroom. Plaintiff also helped Young pull her sweater down when she emerged from the shower.

26. Plaintiff left Young's room once she emerged from the shower, and Young slept it off. When she awoke the following day, she did not have any memory of what occurred the prior evening. Young informed Jones that she woke up in clean clothes and noticed a wet towel but did not otherwise remember what happened.[1]

27. Although she lacked any memory of what had happened the previous evening, Young became concerned precisely due to her lack of recollection, that something inappropriate had occurred. Young reported the incident to FLETC as well as to local law enforcement. As a result of Young's complaint, Alexander was dismissed from the CBP basic training class on October 1, 2018, and he left FLETC on October 2, 2018.

### Administrative actions of CBP and FLETC after Alexander left FLETC

28. On October 1, 2018, Alexander received a memorandum from Christopher R. Holtzer, Director of the CBP Field Operations Academy, notifying Alexander that "allegations were made against [Alexander] involving misconduct that warranted investigation by CBP and the Federal Law Enforcement Training Center's Office of Responsibility (OPR). In light of this allegation and investigation, you will be unable to continue in the U.S. Customs and Border Protection Officer Basic Training." The Holzer Memorandum is attached hereto as Exhibit "1".

29. On about November 4, 2022, Alexander received a letter from FLETC dated October 29, 2018, stating that his access to FLETC was restricted, and further stated: "This restriction is a result of your actions at FLETC Glynco on or about September 29, 2018, which involved inappropriate behavior directed towards a female student. Specifically, you admitted that you

---

[1] Young sent Alexander a text message asking him what had happened the night before. Alexander, who was driving to Florida for a haircut, responded while he was driving and sent a hastily worded reply. His intention was to assure Young that she had friends who took care of her. Because of the poorly worded reply in which two words were transposed, Young misread the reply to mean that Alexander had undressed her, showered her, and dressed her, which he had not done.

escorted an intoxicated female student to her room at the FLETC Glynco, and proceeded to undress and shower her without consent." The FLETC Restriction Letter is attached hereto as Exhibit "2".

30. The Restriction Letter further stated:

> Pursuant to FLETC Directive and Manual 71-01, Access Control, the FLETC facilities are closed Federal facilities and access is a privilege which may be withdrawn when such action is in the best interests of the FLETC. In the event you feel you have a legitimate need to enter any FLETC premises, you may contact the undersigned or anyone designated as acting on my behalf, to request approval for your access. If your request is granted, appropriate arrangements will be made, and you will be informed of the specific restrictions required while you are on FLETC premises.

31. The Restriction Letter was inaccurate in that Alexander did not admit and, in fact denied, that he undressed and showered her without her consent.

32. Alexander did not receive the Restriction Letter until about November 4, 2022, more than four years after it was issued. No proof of mailing of the Restriction Letter is appended thereto.

33. After Alexander left FLETC on October 2, 2018, he was posted to the Mail Branch CBP mail facility at JFK Airport, where he continued his employment as a CBPO officer in the employment of CBP until he was terminated without any due process, on July 18, 2019.

34. Alexander was reinstated and awarded back pay and attorney's fees pursuant to the decision of the MSPB dated September 14, 2020. The 2020 MSPB decision is attached hereto as Exhibit "3".

35. Thereafter, Alexander was again posted to modified duty, and CBP investigated the allegations relating to the Incident. On February 16, 2022, CBP sent Alexander notice of

6

proposed discipline of removal based upon charges of Inappropriate Conduct (Charge 1) and Lack of Candor (Charge 2). The results of the CBP investigation were contained in a Report of Investigation. The February 16, 2022 Proposed Discipline Letter is attached hereto as Exhibit "4".

36. Specification 1 of the Inappropriate Conduct Charge alleged that Alexander "engaged in inappropriate conduct with a fellow Federal Law Enforcement Training Center (FLETC) trainee (Trainee A) in that you brought her back to her room, took her clothes off, put her in the shower, bathed her, and put her clothes back on. During this Conduct, your classmate was visibly intoxicated." A second specification of inappropriate conduct alleged that Alexander stated to Trainee B, a different FLETC classmate, "I want you to be my first white girl."

37. Specification 2, charging lack of candor, alleged that Alexander displayed a lack of candor when being questioned about the incident by the Glynco County Police.

36. Pursuant to CBP procedures and in accordance with the applicable Collective Bargaining Agreement, Alexander had the right to contest the charges and the proposed discipline by presenting a rebuttal. Alexander presented his oral rebuttal to the CBP charges and proposed discipline which was heard by the Director of Field Operations ("DFO") Russo. The oral rebuttal was transcribed by a court reporter.

37. By letter of October 25, 2022, DFO Russo found "sufficient evidence to support that you entered the Federal Law Enforcement Training Center (FLETC) trainee's (Trainee A) room with her while she was visibly intoxicated, helped her take her clothes off, and then helped her to put her clothes back on." DFO Russo did not find sufficient evidence to sustain the allegations that

Alexander put Young in the shower and bathed her.[2] DFO Russo also sustained Charge 2 of the inappropriate behavior specification, that Alexander stated to Trainee B, "I want you to be my first white girl." DFO Russo's October 25, 2022 Decision Letter is attached hereto as "Exhibit "5".

38. DFO Russo did not sustain the charge of Lack of Candor.

39. Rather than sustaining the proposed penalty of removal, DFO imposed a thirty-day suspension upon Alexander.[3]

40. On October 28, 2022, Alexander received a memorandum from Salvatore Ingrassia, the CBP Port Director of JFK Airport. Director Ingrassia's memorandum is attached hereto as Exhibit "6". Director Ingrassia's memorandum states in pertinent part:

> Since your proposed removal has resulted in a 30-day suspension, in order for you to remain a CBP Officer, you will need to successfully complete Basic CBP Officer training at FLETC. Therefore, you will need to submit a request for reconsideration of your restriction from access to any facility or area of FLETC. If your request for termination of your restriction to FLETC is denied, the Agency cannot allow you to remain in your current position of CBP Officer, since successful completion of Basic Officer training is a requirement of the position. You are required to submit your request to FLETC no later than two (2) weeks from your receipt of this letter and you must provide a copy of your request to Frank Formato, Chief, Office of Integrity and Professionalism, JFK Airport. Upon receipt of a response to your request, please

---

[2] Alexander has stated that he helped Young take her shoes and socks off before Young showered, and helped her pull her sweater down after Young dressed herself. There is no evidence in the record before DFO Russo, other than Alexander's acknowledgement, summarized here, that Alexander either undressed or dressed Young.
[3] Alexander has appealed DFO Russo's finding to the MSPB.

provide a copy to Chief Formato, so the Agency can proceed accordingly.

41. On November 3, 2022, Alexander sent a request to reinstate his access to FLETC for the purpose of completing his CBP basic training, required to continue his career as a CBPO. Alexander's request for the removal of his access restriction is attached hereto as Exhibit "7".

42. On December 19, 2022, Alexander received a letter from David Emond, the Chief Security Officer of FLETC (dated December 9, 2022), denying Alexander's request to rescind the restriction of Alexander's access to FLETC, such that Alexander could resume basic training. Chief Security Officer's December 9 letter is attached hereto as Exhibit "8".

43. In Mr. Emond's December 9 letter, he incorrectly states that "Alexander admitted that he escorted an intoxicated female student to her room at the FLETC Glynco and proceeded to undress and shower her without her consent."

44. Mr. Emond further stated "Pursuant to FLETC Directive and Manual (FD/FM) 71-0 I, Access Control, FLETC facilities are closed federal facilities and access is a privilege which may be withdrawn based on circumstances that could pose a threat to the safety and security of the FLETC community, or when such action is in the best interests of FLETC."

45. He also states that:

[u]pon receipt of [Alexander's] request, the Office of Security and Professional Responsibility (OSPR) initiated a review of [Alexander's] restriction status, including the initial Restriction Letter, [Alexander's] appeal request, the security reporting from the incident, and the findings of U.S. Customs and Border Protection (CBP) in sustaining a single disciplinary charge of Inappropriate Conduct involving two specifications. In accordance with FD/FM 71-0 I, [Alexander's] request was referred to the FLETC Director's Office for a final decision. Following a review of this incident and in consideration of your request for reconsideration, Director Thomas J. Walters

has denied your request to rescind the previously issued Restriction Letter. Therefore, you remain restricted from access to any facility, building or area of FLETC.

46. Upon information and belief, despite the formulaic recitation of steps taken in a 2022 investigation of the incident, no investigation was conducted by FLETC on or about the time of the incident or until Mr. Alexander's November 3, 2022 letter request.

47. Moreover, upon information and belief, FLETC did not conduct an adequate independent investigation relating to Mr. Alexander's November 3, 2022 request and did not have any adequate basis by which to deny his request.

48. Alexander is unable to continue his career as a CBPO unless he is permitted access to FLETC.

49. Alexander has been employed as a CBPO since the date of the incident. CBP has imposed only a thirty-day penalty based upon its findings, which are, in substance, the findings relied upon by FLETC to end Alexander's career by excluding him from access for the purpose of completing CBP basic training.

50. FLETC has not provided Alexander with any due process in connection with its investigation or decision not to reverse the restriction previously imposed.

## FINAL AGENCY ACTION

51. Mr. Emond's December 9 letter, which was received by Alexander on December 19, is the final agency decision in this matter under the Administrative Procedures Act, 5 U.S.C. §704.

52. This action is filed within sixty (60) days of the final agency decision.

## ADMINISTRATIVE PROCEDURE ACT CLAIMS

53. Paragraphs 1 through 52 are restated and realleged.

54. Defendants acted arbitrarily, capriciously and abused their authority by expelling the Plaintiff from FLETC training. 5 U.S.C. §§ 702, 706(2)(a).

55. Defendants acted contrary to constitutional right, power, privilege, or immunity in violation of 5 U.S.C. §§ 702, 706(2)(b).

56. Defendants acted without observance of procedure required by law in violation of 5 U.S.C. §§ 702, 706(2)(d) and are unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court 5 U.S.C. §§ 702, 706(2)(f).

57. The agency denial of Alexander's request to remove the restriction of access to FLETC, denies Alexander the ability to complete his CBP basic training. Since Alexander now is subject to only a thirty-day suspension, FLETC's action is preventing Alexander from continuing in his career as a CBPO, even though CBP has determined that he may resume his training and his career.

58. FLETC failed to timely and properly investigate and adjudicate this matter prior to rendering its final decision.

59. FLETC failed to adhere to its own rules and regulations in investigating and adjudicating this matter and rendering its final decision.

60. FLETC failed to provide Alexander due process of law in investigating and adjudicating this matter and rendering its final decision, including notice and a hearing as required by 5 U.S.C.§ 554.

61. The failure to lift the restriction on Alexander is unreasonable and, upon information and belief, significantly more severe than those penalties given to the other similarly situated trainees who engaged in the same alleged misconduct.

62.     A review of the administrative record in this case will establish that the Defendants lack a rational connection between the harsher penalty of expulsion for the Plaintiff, as compared to the final actions against the other trainees involved who engaged in the same conduct.

**WHEREFORE**, the Plaintiff respectfully request that the Court:

Declare that the Defendants have acted arbitrarily and capriciously in violation of 5 U.S.C. § 706(2) in expelling Alexander from access to FLETC so that he may complete his CBP basic training.

Order the Defendants to rescind the restriction actions and issue a new final agency decision consistent with the less severe penalties issued to the other trainees involved in the incident which lead to the Plaintiff's expulsion.

Grant such other relief that this Court deems just, equitable and proper.

Award the Plaintiff his attorney fees and costs, including costs under the Equal Access to Justice Act, or other applicable law.

Maintain jurisdiction over this action until the Defendants have complied with the Court's orders.

Dated:  Brewster, New York
        February 9, 2023

> Yours, etc.,
> HOGAN, ROSSI & LIGUORI
>
> By:      /s/
> Scott J. Steiner, Esq.
> *Attorneys for Plaintiff*
> 3 Starr Ridge Rd.  Suite 200
> Brewster, NY 10509
> (845) 279-2986